# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/17/2024** at 01:15:42 PM

Clerk of the Superior Court
By Carla Boston, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Kraft Heinz Foods Company, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Cori Hortin and Valerie Morrison, on behalf of themselves all others similarly situated, and the
general public

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es:)* San Diego Superior Court, Central

CASE NUMBER:
*(Número del Caso):*

**37-2024-00018268-CU-BT-CTL**

330 West Broadway, San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Fitzgerald Monroe Flynn PC, Trevor Flynn, 2341 Jefferson St., Suite 200, San Diego, CA 92110, 619-215-1744

| DATE: 04/18/2024 | Clerk, by | C. Boston | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | C. Boston | *(Adjunto)* |

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Snapple Beverage Corp.

under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):*

Page 1 of 1

**SUMMONS**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/17/2024** at 01:15:42 PM

Clerk of the Superior Court
By Carla Boston,Deputy Clerk

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT (SBN 321222)
*cemhardt@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| CORI HORTIN and VALERIE MORRISON, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT HEINZ FOODS COMPANY, LLC,<br><br>Defendant. | Case No: 37-2024-00018268-CU-BT-CTL<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 *et seq.*; CAL. BUS. & PROF. CODE §§ 17500 *et seq.*; AND UNJUST ENRICHMENT**<br><br>*(CIVIL UNLIMITED MATTER)*<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Cori Hortin and Valerie Morrison, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue Defendant Kraft Heinz Foods Company, LLC ("Kraft Heinz"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1.      Kraft Heinz, the third-largest food and beverage company in North America and the fifth-largest in the world, manufactures and sells various meal kits under the Oscar Meyer brand, called "Lunchables."

2.      The Lunchables line of meal kits consist of about 30 different kinds of variety combinations, which include crackers, pizzas, chicken nuggets, small hot dogs, small burgers, nachos, subs, and wraps. The Lunchables meal kits are commercially marketed to children. They are packaged in colorful boxes and typically consist of equal parts deli meat, cheese, crackers, and sometimes pizza sauce for the "pizza" varieties.

3.      A 2024 report by Consumer Reports found high concentrations of lead, cadmium, and phthalates in certain varieties of Lunchables, including Turkey and Cheddar Cracker Stackers, Pizza with Pepperoni, and Extra Cheesy Pizza (collectively the "Products"). As a result, Consumer Reports petitioned the USDA to remove all Lunchables products from the National School Lunch Program.

4.      Lead and cadmium are heavy metals and their presence in food, alone or combined, in the amounts found in the Products, can increase the risk of various physiological diseases, including irreversible damage to brain development, liver, kidneys, bones, and other health problems. With respect to lead specifically, particularly when children are consuming it, experts agree no amount is considered safe.

5.      Phthalates, often called "plasticizers," are a group of chemicals used to make plastics more durable. Some phthalates are used to help dissolve other materials. Phthalates are often found in products such as vinyl flooring, lubricating oils, and personal-care

products (soaps, shampoos, hair sprays), and can sometimes be found in polyvinyl chloride plastics, which are used to make products such as plastic packaging, garden hoses, and medical tubing. Phthalates are well-known for disrupting the hormonal system, with extensive laboratory research concluding that exposure to phthalates reduces testosterone levels and leads to an array of reproductive problems. Effects include malformations in organs needed for sperm development, hypospadias (abnormal urinary openings), and undescended testes.

6. The Products Consumer Reports tested contained so much lead and cadmium that a single serving would expose a child at 74%, 73%, and 69% of California's maximum allowable dose level ("MADL") for lead, respectively:



7. The two pizza varieties of the Products also contained more than 50% of the MADL for cadmium.

8. According to experts at Consumer Reports, that is a high dose of heavy metals for children given the relatively small serving sizes of Lunchables, which range from just 2

to 4 ounces.[1] For example, the Lunchables provide only about 15 percent of the 1,600 daily calories that a typical 8-year-old requires, but that small amount of food already puts them close to the daily maximum limit for lead. Thus, "[e]ven if one meal kit doesn't push a child over the limit, it puts them in the danger zone because there will likely be exposure from other sources. So if a child gets more than half of the daily limit for lead from so few calories, there's little room for potential exposure from other foods, drinking water, or the environment."[2]

9.      Due to Kraft Heinz's acts and omissions concerning the presence of lead, cadmium, and phthalates, consumers who purchased the Products suffered economic injury since the Products cost more than they would have had the truth about been known.

10.      Plaintiffs bring this action against Kraft Heinz on behalf of themselves, similarly-situated Class Members, and the general public to enjoin Kraft Heinz from continuing its unfair, unlawful, and deceptively business practices regarding the Lunchables, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

11.      The California Superior Court has jurisdiction over this matter as a result of defendant's violations of the California Business and Professions Codes and California common law principles.

12.      This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution, because this case is not a cause given by statute to other trial courts.

13.      The aggregate restitution sought herein exceed the minimum jurisdictional limits for the Superior Court and will be established at trial, according to proof.

---

[1] *Should You Pack Lunchables for Your Kid's School Lunch?*, CONSUMER REPORTS (April 9, 2024), *available at* https://www.consumerreports.org/health/lunch-and-snack-packs/should-you-pack-lunchables-for-your-kids-school-lunch-a1165583878/.

[2] *Id.*

14.     The California Superior Court also has jurisdiction in this matter because there is no federal question at issue, as the issues herein are based solely on California statutes and law.

15.     The Court has personal jurisdiction over Kraft Heinz as a result of Kraft Heinz's substantial, continuous and systematic contacts with the State, and because Kraft Heinz has purposely availed itself of the benefits and privileges of conducting business activities within the State, including by marketing, distributing, and selling the Lunchables in California.

16.     Venue is proper in San Diego County because a substantial part of the events or omissions giving rise to the class claims occurred in San Diego County.

## PARTIES

17.     Plaintiff Cori Hortin is a resident of Escondido, California, in San Diego County.

18.     Plaintiff Valerie Morrison is a resident of San Diego, California.

19.     Defendant Kraft Heinz Foods, LLC is a Pennsylvania limited liability company with co-headquarters in Chicago, Illinois and Pittsburgh, Pennsylvania.

## FACTS

I.     **TOXIC LEAD, CADMIUM, AND PHTHALATES ARE PRESENT IN THE PRODUCTS**

20.     Each of the Products challenged in this lawsuit contain levels of lead, cadmium, or phthalates which, when consumed, increase the risk of disease.

21.     Consumer Reports' testing of the Turkey and Cheddar Lunchables showed it contained 37ppb of lead. The testing also confirmed the presence of phthalates.

22.     Consumer Reports' testing of the Pizza with Pepperoni showed it contained 37ppb of lead and more than 200ppb of cadmium. The testing also confirmed the presence of phthalates.

23.     Consumer Reports' testing of the Extra Cheesy Pizza showed it contained 35ppb of lead and more than 200ppb of cadmium.

24.     Kraft Heinz knew, or reasonable should have known, the Products had unsafe levels of toxic heavy metals and phthalates, and could have implemented changes to its business practices, to eliminate, or at least significantly reduce, them in the Products it sold to Plaintiffs and the public. But Kraft Heinz failed to take the steps necessary to do so.

## II.     CONSUMPTION OF LEAD, CADMIUM, AND PHTHALATES INCREASE THE RISK OF DISEASE

25.     Lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[3] Even "extremely low" levels of lead exposure have been "found to reduce the cognitive capacity of children"[4] when the exposure is consistent and "prolonged intake of even [] low level[s] of lead is hazardous to human beings."[5]

26.     "Once in the bloodstream, lead is primarily distributed among three compartments – blood, mineralizing tissue, and soft tissues. The bones and teeth of adults contain more than 95% of total lead in the body."[6] However, in times of stress, "the body can mobilize lead stores, thereby increasing the level of lead in the blood," making repeated exposure, even at low levels, particularly sinister, since it is capable of accruing and then lying in wait to be released into the blood at unexpected times.[7]

---

[3] Wani AL, et al., *Lead toxicity: a review*, INTERDISCIP TOXICOL. (June 2015), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898 (hereafter "*Lead toxicity*").

[4] HL Needleman, et al., *The Long-Term Effects of Exposure to Low Doses of Lead in Childhood—An 11-Year Follow-up Report*, N. ENGL. J. MED. 322:83–88 (1990).

[5] *Lead toxicity*, *supra* n.3.

[6] *Id.*

[7] Centers for Disease Control and Prevention ATSSDR Environmental Health and Medicine Education, *What is the Biological Fate of Lead in the Body?* (June 12, 2019), *available online at* https://www.atsdr.cdc.gov/csem/leadtoxicity/biologic_fate.html.

27.    Along with bones, teeth and blood, many other tissues store lead in the body, including the brain, spleen, kidneys, liver, and lungs.[8] Lead has been conclusively found to have no positive physiological role in the body, "while its harmful effects are manifold."[9] The effects of lead have been well studied also at the cellular level and "heavy metals, including lead, create reactive radicals which damage cell structures, including DNA and cell membrane."[10]

28.    In particular, "young children and pregnant women especially should avoid exposure to lead."[11] Children are at particular risk when it comes to lead exposure because it can harm a child's brain development, resulting in learning and behavioral problems.[12]

29.    Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder (ADHD)), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose risks to adults.

30.    Because "[l]ead is a neurotoxin" it is particularly "dangerous for children" because "it affects kids' developing brains and nervous systems" and "[e]ven small amounts of lead exposure add up over time, increasing risk of developmental effects."[13] Thus, because the body has such difficulty expelling lead, and it builds over time, the amount of lead in the Kraft Heinz Products constitutes an unreasonable safety risk for children.

31.    In short, "[r]esearch shows no lead exposure is safe for children."[14]

---

[8] RC Dart, et al., MEDICAL TOXICOLOGY (Lippincot, Williams & Wilkins, 3rd ed. 2004).

[9] *Id.*

[10] MJ Kosnett, POISONING AND DRUG OVERDOSE (McGraw Hill Professional, 5th ed. 2006).

[11] *Toxins in Chocolate*, AS YOU SOW, https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate (last visited Mar. 24, 2023).

[12] Center for Food Safety, https://www.centerforfoodsafety.org.

[13] LEAD POISONING, C.S. Mott Children's Hospital, University of Michigan Health, https://www.mottchildren.org/posts/your-child/lead-poisoning.

[14] Columbia University Irving Medical Center, *Lead and Children: No Amount of Lead is Safe* (Oct. 6, 2022), https://www.cuimc.columbia.edu/news/lead-poison-and-children-no-amount-lead-safe.

32.    In children, and even in adults, exposure to lead may cause anemia, weakness, and kidney and brain damage.[15] Lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma, and death.[16] Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.[17]

33.    According to the United Nations Children's Fund, known globally as UNICEF, "[l]ead is a highly poisonous element that is responsible for nearly 1.5 per cent of annual global deaths – almost as many deaths as from HIV and AIDS, and more than from malaria" and, in fact, "the impact of lead on adults is so large that over 900,000 premature deaths per year are attributed to lead exposure."[18]

34.    Dr. Carl Baum, a medical toxicologist for Yale Medicine who is the director of the Lead Poisoning and Regional Treatment Center in Connecticut, reported that the lead levels in food "are a legitimate cause for concern."[19] According to this expert, "[c]hildren are in a very vulnerable developmental stage, as their brains are still forming" and "[w]e don't want anything interfering with that process, and lead and cadmium, as well as other heavy metals, do interfere with that."[20] Dr. Baum also said that "children may not show

---

[15] Centers for Disease Control and Prevention, *ToxFAQs™ for Lead* (Aug. 7, 2020), *at* https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=93&toxid=22#.

[16] *Id*.

[17] Centers for Disease Control and Prevention, *Pregnant Women* (July 21, 2022), https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.

[18] UNICEF, *7 things to know about lead exposure*, https://www.unicef.org/stories/7-things-know-about-lead-exposure.

[19] *High amounts of lead and sodium found in Lunchables, new report finds. Here's what you need to know.*, Yahoo!Life (April 11, 2024), *available at* https://www.yahoo.com/lifestyle/high-amounts-of-lead-and-sodium-found-in-lunchables-new-report-finds-heres-what-you-need-to-know-214503162.html.

[20] *Id*.

7

immediate signs of lead poisoning, but that over time, it can cause neurodevelopmental problems. Children exposed to lead may experience behavioral issues, slow growth and problems with learning and development, which can affect school performance."[21] Elevated lead levels can also lead to issues with "the synthesis of hemoglobin, which is important in preventing anemia."[22]

35.     Another medical expert, Dr. Sara Scherger, a pediatrician at the Mayo Health Clinic in Austin, Minn., says that "long-term effects of high levels of lead can include kidney damage and nervous system damage, as well as other issues such as seizures, lethargy, abdominal pain, constipation and vomiting" and that, despite "legal and regulatory reasons," that permit food manufacturers to sell food products that contain lead, "when children eat these things regularly, lead can accumulate in the body" and "none of these products should have any lead or cadmium in them."[23]

36.     Cadmium, likewise, poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo. Exposure to cadmium can affect the kidneys, lungs, and bones.[24]

37.     There may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level.[25] Cadmium is considered a class 1 carcinogen by the World Health Organization.[26] Even at low exposure, cadmium can cause nausea, vomiting, diarrhea and abdominal pain. And, because cadmium builds up in the body, even at low

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Cadmium*, BETTER HEALTH CHANNEL, *available at* https://tinyurl.com/4r8frd7z.

[25] New Jersey Department of Health, *Hazardous Substance Fact Sheet*, NJ.GOV (Dec. 2007), *available at* https://www.nj.gov/health/eoh/rtkweb/documents/fs/0305.pdf.

[26] United Nations Environment Programme, *Lead and Cadmium*, UNEP.ORG, https://www.unep.org/explore-topics/chemicals-waste/what-we-do/emerging-issues/lead-and-cadmium.

*Hortin v. Kraft Heinz Foods Company, LLC*
CLASS ACTION COMPLAINT

dosage, repeated exposure can cause liver and kidney damage, anemia, and loss of smell. According to the Centers for Disease Control and Prevention, "exposure to low levels of cadmium in . . . food . . . over time may build up cadmium in the kidneys and cause kidney disease and fragile bones" and is indisputably "considered a cancer-causing agent."[27]

38.    Like with lead, "children are more susceptible than adults to exposure from low doses of cadmium over time."[28]

39.    "Phthalates are a series of widely used chemicals that demonstrate to be endocrine disruptors and are detrimental to human health."[29]

40.    "Even at low levels . . . phthalates can mimic or block hormones, disrupting vital body systems in humans," and "early life exposure to phthalates is linked with asthma, allergies, and cognitive and behavioral problems."[30]

41.    There is evidence linking "phthalates and surging rates of chronic disease" and that is particularly true with children, especially males and older children starting puberty are all at increased risk of harm.[31]

## III.    REASONABLE CONSUMERS DO NOT EXPECT HEAVY METALS OR PHTHALATES IN THE PRODUCTS, BUT KRAFT HEINZ NEVERTHELESS FAILED TO DISCLOSE THEIR PRESENCE

42.    Parents purchase Lunchables for their children because they believe them to be safe and convenient meal and snack options.

---

[27] Centers for Disease Control and Prevention, *Cadmium Factsheet* (Apr. 7, 2017), https://tinyurl.com/y4f2kku7.

[28] *Toxins in Chocolate*, *supra* n. 11.

[29] Wang, Y., et al., *Phthalates and Their Impacts on Human Health*, Healthcare (Basel) (May 18, 2021), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8157593.

[30] *Bisphenols & Phthalates*, Green Science Policy Institute, *available at* https://greensciencepolicy.org/harmful-chemicals/bisphenols-phthalates.

[31] What are Phthalates? WebMD (Oct. 12, 2021), *available at* https://www.webmd.com/a-to-z-guides/features/what-are-phthalates

43.   Kraft Heinz has referred to the Lunchables as providing "improved nutrition."[32] Kraft Heinz has also communicated to consumers that Lunchables are "great for field trips, summer school and dinner programs."[33]

44.   Food manufacturers, like Kraft Heinz, are required by law to "implement preventive controls as needed to significantly minimize or prevent exposure to chemical hazards—including lead," especially in foods intended for vulnerable groups, like children.[34]

45.   Reasonable consumers would not expect foods marketed to children to contain lead, cadmium, and/or phthalates.

46.   Kraft Heinz knew that if it revealed to the public the presence of unsafe levels of toxic heavy metals or phthalates in Products, Plaintiffs and other Class Members would be unwilling to purchase the Products or would pay less for them.

47.   Understanding consumers would be unwilling to purchase the Products or would pay less if they knew that the Products contained toxic amounts of heavy metals and phthalates, Kraft Heinz concealed this fact from Plaintiffs and other Class Members and did not disclose the presence of, or risk of presence of, unsafe levels of toxic heavy metals and phthalates on the label of the Products.

48.   Kraft Heinz knew or should have known that Plaintiffs and other Class members would rely upon the packages of the Products and intended for them to do so but failed to disclose the presence of unsafe levels of toxic heavy metals and phthalates. That is, the consumer-facing messages on the Products' packaging that Defendant chose failed to make any reference to lead, cadmium, or phthalates. Indeed, nowhere on the Products'

---

[32] *Lunchables are going to be rolled out directly to students. Here's what's in them*, CNN.com (Mar. 14, 2023), *available at* https://www.cnn.com/2023/03/13/business/lunchables-in-schools/index.html

[33] *Id*.

[34] *Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods*, FDA (current as of Mar. 21, 2024), *available at* https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-childhood-exposure-contaminants-foods.

packaging is there any disclosure of the inclusion (or possible inclusion) of lead, cadmium, or phthalates.

49.     Kraft Heinz knew or should have known that it owed consumers a duty of care to adequately test for lead, cadmium, other heavy metals, and phthalates. Had Kraft Heinz done so, it would have known that its Products contained lead, cadmium, and/or phthalates. Alternatively, Kraft Heinz *did* know that its Products contained lead, cadmium, and/or phthalates and purposely hid that fact from consumers.

50.     Additionally, Kraft Heinz knew or should have been aware that a reasonable consumer would consume the Products regularly, and possibly multiple Products daily, leading to repeated exposure to lead, cadmium, and/or phthalates, which each independently accumulate in the body and its systems over time, exacerbating the negative effects over time, even if each individual exposure is "low." Thus, the cumulative effect of consuming the Products renders the amount of lead, cadmium, and phthalates unreasonably dangerous to vulnerable consumers, including children.

51.     Kraft Heinz knew or should have known it could control the levels of lead, cadmium, and phthalates in the Products by properly monitoring, sourcing better, less-processed ingredients, adjusting its formulation and ingredients to reduce or eliminate heavy metals, or improve its manufacturing process to eliminate introduction of lead, cadmium, and phthalates caused by Kraft Heinz itself.

52.     Prior to purchasing the Products, Plaintiffs and other Class Members were exposed to, saw, read, and understood the labels of the Products, and relied upon the same in purchasing the Products, but Kraft Heinz failed to disclose the presence of heavy metals.

53.     As a result of Kraft Heinz's concealment of the fact that the Products contained lead, cadmium, and phthalates, Plaintiffs and other Class Members reasonably believed the Products were free from substances that would negatively affect children's health and development.

54.     Plaintiffs and other Class members purchased the Products in reliance upon the Product labels. Had Plaintiffs and other Class members known that the Products contained lead, cadmium, and/or phthalates, rendering them unsafe for children's consumption, they would not have been willing to purchase the Products or would have paid less for them.

55.     Therefore, as a direct and proximate result of Kraft Heinz's omissions concerning the Products, Plaintiffs and other Class Members purchased the Products and paid more than they were worth.

56.     Plaintiffs and other Class Members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products. Since the presence of lead, cadmium, and phthalates in the Products renders them unsafe for children's consumption, the Products that Plaintiffs and other Class Members purchased are worthless, or at a minimum are worth less than Plaintiffs and other Class Members paid for them.

## IV.    THE PRODUCTS' LABELING VIOLATES CALIFORNIA FOOD LABELING LAW

57.     The Products' labeling violates California Health and Safety Code §§ 109875, *et. seq.* (the "Sherman Law"), which has expressly adopted the federal food labeling requirements as its own. *See*, *e.g.*, *id.* § 110100; *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto.").

58.     First, the labeling and website claims are false and misleading for the reasons described herein. 21 U.S.C. § 343(a) deems misbranded any food whose "label is false or misleading in any particular." Kraft Heinz accordingly violated California's parallel provision of the Sherman Law. *See* Cal. Health & Safety Code § 110670.

59.     Second, Kraft Heinz "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any

combination thereof," in violation of California's provision of the Sherman Law incorporating 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Products given that they contain lead, cadmium, or phthalates, which are unsafe in the amounts present in the Products, particularly for vulnerable consumers, including children. In addition, such facts include the detrimental health consequences of consuming the Products, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death, which are all material to a consumer choosing a food product.

60. Third, Kraft Heinz failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of California's provision of the Sherman Law incorporating § 1.21(a)(2). Namely, Kraft Heinz failed to disclose the increased risk of serious chronic disease, disability, and impaired development that is likely to result from the usual consumption of the Products in the customary and prescribed manners, including regular consumption of the standard serving size.

61. Finally, Kraft Heinz has also misbranded its Products in violation of the Sherman Law by, *inter alia*, failing to disclose the presence of lead, cadmium, and/or phthalates on the Products' labels as set forth in 21 U.S.C. § 343, which states that food is misbranded "unless its label bears . . . the common or usual name of each . . . ingredient." That is, food manufacturers, like Kraft Heinz, are required to list all ingredients in the food, unless those ingredients are subject to an exemption from this requirement. Because the lead, cadmium, and/or phthalates are not subject to any exemption under applicable law, Kraft Heinz misbranded the Products.

## V.   PLAINTIFFS' PURCHASE, RELIANCE, AND INJURY

62. Plaintiff Cori Hortin purchased Turkey & Cheddar Cracker Stackers and Pizza with Pepperoni varieties Lunchables for her children. She purchased one or both products

approximately once or twice per month, throughout the class period, with her last purchase approximately six to eight weeks ago. She regularly shops at, and purchased the Turkey & Cheddar Cracker Stackers and Pizza with Pepperoni Lunchables from Vons, Albertsons, and Target stores in Escondido, California.

63.     When purchasing the Products, Ms. Hortin was seeking snacks and meals she believed to be safe, nutritious, and convenient for her children. Ms. Hortin would have avoided any food she knew contained lead, cadmium, and/or phthalates. She would also have avoided purchasing any food she knew could increase her children's risk of physical injury, illness, disease, disability, impaired development, or death.

64.     Ms. Hortin still wish to purchase snack foods and packaged meals for her children and continues to see the Products at stores where she shops. She would purchase the Products in the future if, because of an injunction requiring Kraft Heinz to disclose lead, cadmium, or phthalates when present, she could be assured by the absence of a disclosure that the Products no longer contain lead, cadmium, or phthalates. But unless Kraft Heinz is enjoined in the manner Ms. Hortin requests, she may not be able to reasonably determine whether the lead, cadmium, or phthalates in the Products have been addressed by Kraft Heinz correcting it's unfair business practices, or whether the Products continue to contain lead, cadmium, or phthalates.

65.     Plaintiff Valerie Morrison purchased Turkey & Cheddar Cracker Stackers, Extra Cheesy Pizza, and Pizza with Pepperoni varieties Lunchables for her child. She purchased one of the varieties once every four to six months. She most recently purchased the Extra Cheesy Pizza variety on April 14, 2024 from the Vons store in Pacific Beach, San Diego, California. Approximately four to five months ago, she purchased the Turkey and Cheddar Cracker Stackers variety from the Miramar MCAS commissary. And approximately one year ago, she purchased the Pizza with Pepperoni variety from either the same Vons store or the Miramar commissary.

66.     When purchasing the Products, Ms. Morrison was seeking snacks and meals she believed to be safe, nutritious, and convenient for her child. Ms. Morrison would have avoided any food she knew contained lead, cadmium, and/or phthalates. She would also have avoided purchasing any food she knew could increase her child's risk of physical injury, illness, disease, disability, impaired development, or death.

67.     Plaintiffs acted reasonably in purchasing the Products, whose labels did not disclose the presence of lead, cadmium, and/or phthalates, or the attendant health risks in consuming the Products.

68.     By omitting that its Products contain lead, cadmium, and/or phthalates, Kraft Heinz was able to gain a greater share of the snack and packaged meal market, specifically those marketed toward children, than it would have otherwise and to increase the size of the market.

69.     Plaintiffs paid more for the Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent Kraft Heinz's omissions regarding the lead, cadmium, and phthalates content described herein.

70.     Plaintiffs would not have purchased the Products if they had known that the Products were misbranded pursuant to California and FDA regulations, or that the Products contained lead, cadmium, or phthalates.

71.     For these reasons, the Products were worth less than what Plaintiffs and the Class Members paid for them.

72.     Plaintiffs and the Class lost money as a result of Kraft Heinz's omissions and unfair practices in that they did not receive what they paid for when purchasing the Products.

73.     Plaintiffs' substantive right to a marketplace free of fraud, where they are entitled to rely with confidence on representations such as those made by Kraft Heinz, continues to be violated every time Plaintiffs are exposed to the Products' labels.

**CLASS ACTION ALLEGATIONS**

74.     California Code of Civil Procedure § 382 provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

75.     While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, Plaintiff seeks, pursuant to Code Civ. Proc. § 382, to represent a class of all persons in California, who, at any time from April 17, 2020 to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, the Products (the "Class").

76.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

77.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78.     There is a well-defined community of interest in the common questions of law and fact affecting Class members. The questions of law and fact common to Class members predominate over questions affecting only individual Class members, and include without limitation:

      a.     whether the omissions on the Products labels with respect to lead, cadmium, or phthalates content are material, or likely to be material, to a reasonable consumer;

      b.     whether the omissions regarding lead, cadmium, or phthalates content were reasonably likely to deceive a reasonable consumer;

      c.     whether Kraft Heinz's conduct is unfair;

      d.     whether Kraft Heinz's conduct violates state food statutes or regulations;

16

e.      the proper amount of restitution;

f.      the proper scope of injunctive relief; and

g.      the proper amount of attorneys' fees.

79.     These common questions of law and fact predominate over questions that affect only individual Class Members.

80.     Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Kraft Heinz's conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same unfair, unlawful, and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented. Absent Kraft Heinz's unfair business practices, Plaintiffs and other Class Members would not have purchased the Products or would have paid less for them.

81.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

82.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The harm, including the financial detriment suffered individually by Plaintiffs and the other Class Members, is relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device

presents far fewer management difficulties, providing the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

83.    Kraft Heinz has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

84.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***

85.    Plaintiffs reallege and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

86.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

87.    Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

88.    The acts, omissions, misrepresentations, practices, and non-disclosures of as alleged herein constitute business acts and practices.

### Fraudulent

89.    A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

90.    As set forth herein, Kraft Heinz's omissions regarding the lead, cadmium, and phthalates content of the Products is likely to deceive reasonable consumers and the public.

### Unlawful

91.    As set forth herein, Kraft Heinz's omissions are "unlawful" under the UCL in that they violate at least the following laws:

•    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- The Song-Beverly Act, Cal. Civ. Code, §§ 1790 *et seq.*;
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

92.     By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

**Unfair**

93.     Kraft Heinz's conduct with respect to the labeling, advertising, and sale of the Products was unfair because Kraft Heinz's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

94.     Kraft Heinz's conduct in manufacturing the Products was unfair because it unnecessarily introduced lead, cadmium, and phthalates into the Products. Specifically, a significant amount of the lead, cadmium, and phthalates found in the Products sold at retail is the result of Kraft Heinz's manufacturing process. Kraft Heinz's unfair business practices ultimately led to unsafe levels of lead, cadmium, and phthalates being present in the Products. This is evidenced by the fact that Consumer Reports tested various other brands of similar meal kits, including ones with meat, cheese, and crackers, and marketed to children, of similar serving sizes, and found that they contained less than one-third of the amount of lead in the Products.

95.     Kraft Heinz's conduct with respect to the labeling, advertising, and sale of the Products was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law and portions of the California Sherman Food, Drug, and Cosmetic Law.

*Hortin v. Kraft Heinz Foods Company, LLC*
CLASS ACTION COMPLAINT

96.     Kraft Heinz's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Kraft Heinz through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Products unaware that they contain lead, cadmium, and phthalates and are of the type that can increase the risk of poor health. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the lead, cadmium, and phthalates content of the Products, which could only feasibly be revealed by laboratory testing, which is not a reasonable expectation. Further, the harm could have easily been avoided by Kraft Heinz as it would have cost them only minimally to indicate to consumers that the Products contain lead, cadmium, and phthalates, and that these toxins can over time accumulate in the body to the point where poisoning, injury, disease, disability, and impaired development can occur.

97.     Kraft Heinz profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

98.     Plaintiffs and other Class Members are likely to continue to be damaged by Kraft Heinz's deceptive trade practices, because Kraft Heinz continues to disseminate misleading information. Thus, injunctive relief enjoining Kraft Heinz's deceptive practices is proper.

99.     Kraft Heinz's conduct caused and continues to cause substantial injury to Plaintiffs and other Class Members. Plaintiffs suffered injury in fact as a result of Kraft Heinz unlawful conduct.

100.   In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Kraft Heinz from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

*Hortin v. Kraft Heinz Foods Company, LLC*
CLASS ACTION COMPLAINT

101.   Plaintiffs and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*

102.   Plaintiffs reallege and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

103.   California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

104.   As set forth herein, the Plaintiffs purchased Products based on their labels, which constituted advertising and which omitted the presence of lead, cadmium, and phthalates in the Products.

105.   Plaintiffs and other Class Members paid money for the Products. However, they did not obtain the full value or any value of the Products due to Kraft Heinz's omissions regarding the nature of the Products. Accordingly, Plaintiffs and other Class Members suffered an injury in fact and lost money or property as a direct result of Kraft Heinz's omissions.

106.   Kraft Heinz's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future and hope to rely on Kraft Heinz's marketing and packaging.

107.   Plaintiffs and other Class Members are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

108.   Injunctive relief is also appropriate, and indeed necessary, to require Kraft Heinz to provide full and accurate disclosures regarding the Products so that Plaintiffs and Class members can reasonably rely on the Products' packaging as well as those of Kraft Heinz's competitors who may then have an incentive to follow Kraft Heinz's deceptive practices, further misleading consumers.

109.   Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full price or full premium price, and an injunction requiring either (1) adequate disclosures of the existence of toxic lead and cadmium in the Products or (2) the removal of lead and cadmium from the Products, will ensure that Plaintiffs and other Class Members are in the same place they would have been in had Kraft Heinz's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent omissions.

### THIRD CAUSE OF ACTION

### Unjust Enrichment

110.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

111.   Plaintiffs and Class Members conferred upon Defendant an economic benefit, in the form of profits resulting from the purchase and sale of the Products.

112.   Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiffs' and Class Members' purchases of the Products, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

113.   It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

114.   As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

### <u>PRAYER FOR RELIEF</u>

115.   Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Kraft Heinz as to each and every cause of action, and the following remedies:

a.      An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representative, and appointing Plaintiffs' undersigned counsel as Class Counsel;

b.      An Order requiring Kraft Heinz to bear the cost of Class Notice;

c.      An Order compelling Kraft Heinz to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

d.      An Order compelling Kraft Heinz to cease its unfair business practices which unnecessarily result in concentrating high levels of lead, cadmium, and phthalates;

e.      An Order requiring Kraft Heinz to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

f.      An Order requiring Kraft Heinz to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

g.      An award of attorneys' fees and costs; and

h.      Any other and further relief that the Court deems necessary, just, or proper.

## **JURY DEMAND**

116.   Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  April 17, 2024

*Trevor Flynn*

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT

23

*cemhardt@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

24